IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PEDRO FELICIANO,<br><br>    Petitioner,<br><br>  v.<br><br>BEN CURRY, Warden,<br><br>    Respondent.<br>_____/ | No. C 07-4713 CW (PR)<br><br>ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS; DENYING CERTIFICATE OF APPEALABILITY |

INTRODUCTION

Pro se Petitioner Pedro Feliciano, a state prisoner incarcerated at the Correctional Training Facility in Soledad, California, seeks a writ of habeas corpus under 28 U.S.C. § 2254 challenging the August 31, 2005 decision of the California Board of Parole Hearings (BPH) to deny him parole at his fourth parole suitability hearing. Doc. No. 1 at 10.

On February 7, 2008, the Court issued an Order to Show Cause why the writ should not be granted. Doc. No. 3. On April 30, 2008, Respondent filed a motion to dismiss the Petition on the ground that it was untimely, which the Court denied on March 11, 2009.

Doc. Nos. 7 & 11. On June 8, 2009, Respondent filed an Answer. Doc. No. 12. On June 18, 2009, Petitioner filed a Traverse. Doc. No. 13.

After the matter was submitted, on April 22, 2010, the Ninth Circuit issued its decision in Hayward v. Marshall, 603 F.3d 546 (9th Cir. 2010) (en banc), which addressed important issues relating to federal habeas review of BPH decisions denying parole to California state prisoners. On May 6, 2010, the Court ordered the parties to file Supplemental Briefing explaining their views of how the Hayward en banc decision applies to the facts presented in Petitioner's challenge to the BPH's decision denying him parole. Doc. No. 14. Respondent filed Supplemental Briefing on May 28, 2010; Petitioner filed his on June 14, 2010. Doc. Nos. 15 & 16.

Having considered all of the papers filed by the parties, the Court DENIES the Petition.

## BACKGROUND

At Petitioner's August 31, 2005 parole suitability hearing, the BPH read two factual summaries of Petitioner's commitment offense. Doc. No. 12-1 at 36–39. The first derives from Petitioner's 2004 parole suitability hearing and is set forth below.

> On June 15, 1[9]82 at approximately 8:18 p.m. officers from the Colton Police Department responded to East Congress Street in Colton to [a] call [of] shots fired. Subsequent investigation revealed that [Petitioner's] estranged common-law wife Lazarra . . . Hernandez, victim, went to his residents [sic] in order to see her three children. She was driven to the house by her boyfriend of two months, Pedro Rodriguez. While still in the vehicle, they were approached by [Petitioner], who advise[d] Rodriguez to . . . "take out the

2

> rifle" . . . because he was going to obtain one. Mr. [Rodriguez] then informed [Petitioner] that [he] did not have a rifle. [Petitioner] obtained a 22 caliber automatic rifle from his . . . house, stood in the . . . area of the doorway and fired two to four shots in the direction of the vehicle striking Rodriguez in the neck and Ms. Hernandez in the head. Rodriguez was able to drive the vehicle away from the area and made contact with police. Both victims received emergency medical care and shortly there after [sic] Ms. Hernandez was pronounced dead at Loma Linda Medical Center. [Petitioner] was arrested at his residents [sic] at approximately 8:33 p.m.

Doc. No. 12-1 at 36–38.

Below is Petitioner's version of the commitment offense that originally was set forth in a statement made in 1998, which Petitioner maintained as true at his 2005 parole suitability hearing.

> [Petitioner] stated that he never told Rodriguez to take out the rifle. He stated that when Rodriguez pulled up in his car, he parked right in front of [Petitioner's] apartment. [Rodriguez] told . . . [Petitioner] that . . . Ms. Hernandez wanted her children back. [Petitioner] told him that he would not give up the children and told Rodriguez to move his car from in front of his apartment. . . . [Petitioner] claimed . . . that he told Rodriguez that [Ms.] Hernandez could go to the end of the apartment to see her children. Then he said that Rodriguez refused to move his car so [Petitioner] went to his apartment, got a 22. [sic] [c]aliber rifle. It [sic] says that he stood in his doorway. He saw Rodriguez reach down. He thought Rodriguez was reaching for a relationship [sic], so he claims he fired two rounds not knowing his common-law wife was still in the car. He did not believe at first that he had killed – I'll back up. He claims that even when he was arrested, he did not believe at fist [sic] that he had killed Hernandez. He said he felt badly and was concerned because he knew he was going to jail and that . . . [there] would be nobody to take care of his children. He said

3

>he didn't have any problems with his ex-common
>law wife and never intended to kill her.

Doc. No. 12-1 at 38–39.

On January 27, 1983, Petitioner was convicted in San Bernardino County Superior Court of one count of first degree murder and one count of attempted first degree murder with firearm enhancements attached to both counts. Doc. No. 1 at 2. He was sentenced to a term of twenty-seven years to life in state prison. Id. His minimum eligible parole date was June 16, 2000. Doc. No. 12-1 at 27.

On August 31, 2005, Petitioner appeared before the BPH for his fourth parole suitability hearing, having served over twenty two years on his twenty seven to life sentence. Doc. No. 12-1 at 27; Doc. No. 1 at 10. At the hearing, the BPH found Petitioner was not yet suitable for parole and that he would pose an unreasonable risk of danger to society or threat to public safety if released from prison, citing the circumstances of the commitment offense and expressing concern over Petitioner's absence of realistic parole plans, including his lack of "firm job offers at this time." Doc. No. 12-1 at 45 & 64–65.

Petitioner unsuccessfully challenged the BPH's decision in the state superior and appellate courts. Doc. No. 12-3 at 22–24. On August 8, 2007, the California Supreme Court summarily denied Petitioner habeas relief. Doc. No. 1 at 23. This federal Petition for a Writ of Habeas Corpus followed. Doc. No. 1.

LEGAL STANDARD

In Hayward, the Ninth Circuit explained the law in California

4

as it relates to parole suitability determinations:

> The California parole statute provides that the Board of Prison Terms "shall set a release date unless it determines that the gravity of the current convicted offense or offenses, or the timing and gravity of current or past convicted offense or offenses, is such that consideration of the public safety requires a more lengthy period of incarceration for this individual." The crucial determinant of whether the prisoner gets parole in California is "consideration of the public safety."
>
> In California, when a prisoner receives an indeterminate sentence of fifteen years to life, the "indeterminate sentence is in legal effect a sentence for the maximum term, subject only to the ameliorative power of the [parole authority] to set a lesser term." Under the California parole scheme, the prisoner has a right to a parole hearing and various procedural guarantees and rights before, at, and after the hearing; a right to subsequent hearings at set intervals if the Board of Prison Terms turns him down for parole; and a right to a written explanation if the Governor exercises his authority to overturn the Board of Prison Terms' recommendation for parole. Under California law, denial of parole must be supported by "some evidence," but review of the [decision to deny parole] is "extremely deferential."

Hayward, 603 F.3d at 561-62 (footnotes and citations omitted).

The court further explained that:

> [s]ubsequent to Hayward's denial of parole, and subsequent to our oral argument in this case, the California Supreme Court established in two decisions, In re Lawrence [190 P.3d 535, 549 (Cal. 2008)] and In re Shaputis, [190 P.3d 573, 582 (Cal. 2008)] that as a matter of state law, "some evidence" of future dangerousness is indeed a state sine qua non for denial of parole in California. We delayed our decision in this case so that we could study those decisions and the supplemental briefs by counsel addressing them. As a matter of California law, "the paramount consideration for both the Board [of Prison Terms] and the Governor under the governing statutes is whether the inmate currently poses a threat to public safety." [Lawrence, 190 P.3d at 552.] There must be "some evidence" of such a threat, and an aggravated offense "does not, in every case, provide evidence that the inmate is a current threat to public safety." [Id. at 554.] The prisoner's aggravated offense does not

5

>establish current dangerousness "unless the record also establishes that something in the prisoner's pre- or post-incarceration history, or his or her current demeanor and mental state" supports the inference of dangerousness. [Id. at 555.] Thus, in California, the offense of conviction may be considered, but the consideration must address the determining factor, "a current threat to public safety." [Id. at 539.]

Hayward, 603 F.3d at 562 (footnotes and citations omitted).

After providing this background on California law as it applies to parole suitability determinations, the court then explained the role of a federal district court charged with reviewing the decision of either the BPH or the governor in denying a prisoner parole. According to the Ninth Circuit, this Court must decide whether a decision "rejecting parole was an 'unreasonable application' of the California 'some evidence' requirement, or was 'based on an unreasonable determination of the facts in light of the evidence.'"[1] Hayward, 603 F.3d at 562–63 (citations omitted); see also Cooke v. Solis, 606 F.3d 1206, 1208, n.2 & 1213 (9th Cir. 2010) (applying Hayward and explicitly rejecting the state's argument that "the constraints imposed by AEDPA preclude federal habeas relief" on petitioner's claim; noting that in Hayward, the court "held that due process challenges to California courts' application of the 'some evidence' requirement are cognizable on federal habeas review under

---

[1] Applying this standard to the facts presented in Hayward, the court concluded that the state court's decision finding there was "'some evidence' of Hayward's future dangerousness because of 'the nature of the commitment offense' and 'the somewhat unfavorable psychological and counsel reports,'" one of which noted that Hayward "would pose a 'low' to 'moderate' risk of danger if released, as opposed to 'no' or merely 'low' risk," was not unreasonable and therefore did not warrant federal habeas relief. Hayward, 603 F.3d at 563.

AEDPA").

//

//

## DISCUSSION

### I. California Law Regarding Parole Suitability Determinations

When assessing whether California's parole board's suitability determination was supported by "some evidence," this Court's analysis is framed by California's "regulatory, statutory and constitutional provisions that govern parole decisions in California."  Cooke, 606 F.3d at 1213 (citing In re Rosenkrantz, 29 Cal. 4th 616 (2002)); see Hayward, 603 F.3d at 561-62.  Under California law, prisoners serving indeterminate life sentences, like Petitioner, become eligible for parole after serving minimum terms of confinement required by statute.  In re Dannenberg, 34 Cal. 4th 1061, 1069-70 (2005).  Regardless of the length of the time served, "a life prisoner shall be found unsuitable for and denied parole if in the judgment of the panel the prisoner will pose an unreasonable risk of danger to society if released from prison."  Cal. Code Regs. tit. 15, § 2402(a).  In making this determination, the BPH must consider various factors, including the prisoner's social history, past and present mental state, past criminal history, the base and other commitment offenses, including behavior before, during and after the crime, past and present attitude toward the crime and any other information that bears on the prisoner's suitability for release.  See Cal. Code Regs. tit. 15, § 2402(b)-(d).

In considering the commitment offense, the BPH must determine

1 whether "the prisoner committed the offense in an especially
2 heinous, atrocious or cruel manner." Cal. Code Regs. tit. 15,
3 § 2402(c)(1).  The factors to be considered in making that
4 determination include:  "(A) Multiple victims were attacked, injured
5 or killed in the same or separate incidents; (B) The offense was
6 carried out in a dispassionate and calculated manner, such as an
7 execution-style murder; © The victim was abused, defiled or
8 mutilated during or after the offense; (D) The offense was carried
9 out in a manner which demonstrates an exceptionally callous
10 disregard for human suffering; (E) The motive for the crime is
11 inexplicable or very trivial in relation to the offense." Id.

According to the California Supreme Court, "the core statutory determination entrusted to the Board and the Governor [in determining a prisoner's parole suitability] is whether the inmate poses a current threat to public safety . . . ." In re Lawrence, 44 Cal. 4th 1181, 1191 (2008).  And, "the core determination of 'public safety' under the statute and corresponding regulations involves an assessment of an inmate's current dangerousness." Id. at 1205 (emphasis in original) (citing Rosenkrantz, 29 Cal. 4th 616 and Dannenberg, 34 Cal. 4th 1061).  The court further explained that:

> a parole release decision authorizes the Board (and the Governor) to identify and weigh only the factors relevant to predicting "whether the inmate will be able to live in society without committing additional antisocial acts." . . . These factors are designed to guide an assessment of the inmate's threat to society, if released, and hence could not logically relate to anything but the threat currently posed by the inmate.

Lawrence, 44 Cal. 4th at 1205-06 (citations omitted).  The relevant inquiry, therefore, is:

8

>           whether the circumstances of the commitment offense,
>           when considered in light of other facts in the record,
>           are such that they continue to be predictive of current
>           dangerousness many years after commission of the
>           offense.  This inquiry is, by necessity and by
>           statutory mandate, an individualized one, and cannot be
>           undertaken simply by examining the circumstances of the
>           crime in isolation, without consideration of the
>           passage of time or the attendant changes in the
>           inmate's psychological or mental attitude.

In re Shaputis, 44 Cal. 4th 1241, 1254–55 (2008).

The evidence of current dangerousness "must have some indicia of reliability." In re Scott, 119 Cal. App. 4th 871, 899 (2004) (Scott I). Indeed, "the 'some evidence' test may be understood as meaning that suitability determinations must have some rational basis in fact." In re Scott, 133 Cal. App. 4th 573, 590, n. 6 (2005) (Scott II); see also Cooke, 606 F.3d at 1216 (holding that the state court decision upholding the denial of parole was "'based on an unreasonable determination of the facts in light of the evidence[],'" Hayward, 603 F.3d at 563 (quoting 28 U.S.C. § 2254(d)(2)), and therefore finding petitioner entitled to habeas relief because "[n]othing in the record supports the state court's finding that there was 'some evidence' in addition to the circumstances of the commitment offense to support the Board's denial of petitioner's parole").

II. Analysis of Petitioner's Claim

Petitioner initially sought federal habeas corpus relief from the BPH's August 31, 2005 decision finding him unsuitable for parole and denying him a subsequent hearing for two years, on the ground that the decision did not comport with due process.  Doc. No. 1. Specifically, Petitioner argued that at his 2005 parole suitability

hearing, the BPH "fail[ed] to address the exact nature of Petitioner's CURRENT character." Id. at 11 (emphasis in original). Petitioner further argues that "a multi-year denial can only be applicable when valid grounds exist to find Petitioner unsuitable for parole." Id. at 17.

Respondent, in both the Answer and post-Hayward Supplemental Briefing, argues that Petitioner is not entitled to relief because he has not demonstrated that the state court decision was contrary to, or an unreasonable application of, the California "some evidence" standard, or that it was based on an unreasonable determination of the facts in light of the evidence. Doc. Nos. 12 & 15.

After reviewing the petition filed in superior court challenging Petitioner's 2005 parole denial, that court concluded: "A review of the record supports a finding that there was 'some evidence' which led the Board to its finding of unsuitability of the Petitioner for parole, for as the [California Supreme Court] described such evidence, it need be only a 'modicum' of evidence." Doc. No. 12-3 at 24. As explained below, after careful review of the record, the Court finds that the state court's approval of the BPH's decision to deny Petitioner parole was not an unreasonable application of the California "some evidence" standard, nor was it based on an unreasonable determination of the facts in light of the evidence. See Hayward, 603 F.3d at 562-63.

The record shows that, at Petitioner's August 31, 2005 parole suitability hearing, the BPH afforded Petitioner and his counsel an

10

opportunity to speak and present Petitioner's case, gave them time to review documents relevant to Petitioner's case and provided them with a reasoned decision in denying parole. Doc. No. 12-1 at 31–36 & 64–71. The record also shows that the BPH relied on several circumstances tending to show unsuitability for parole and that these circumstances formed the basis for its conclusion that Petitioner was not yet suitable for parole and would pose an unreasonable risk of danger to society or threat to public safety if released from prison. Doc. No. 12-1 at 64; see Cal. Code Regs. tit. 15, § 2402(a) (stating that a prisoner determined to be an unreasonable risk to society shall be denied parole).

At the hearing, the BPH commended Petitioner for his lack of prior criminal history, for being free since 1995 of counseling chronos and since 1984 of serious rules violations, and for receiving several laudatory chronos. Doc. No. 12-1 at 65. The BPH expressed concern, however, that Petitioner's "[v]ocational [and] educational participation . . . has been nonexistent for about a decade." Id. at 67. Further, the BPH was "troubled" by Petitioner's parole plans. Id. at 65. The BPH acknowledged that Petitioner had an offer of employment in construction, but also noted that during the evidentiary portion of the hearing Petitioner explained he had various physical limitations which precluded him from working while in prison. Id. at 52–53 & 65. Thus, the BPH did not consider Petitioner's construction job offer to be viable. And, although Petitioner had a place to live with his wife in Hanford, she was unable to work because of an injury sustained in a car

11

1  accident.  Id. at 46-47 & 65-66.  It therefore was not clear how
2  Petitioner planned to support himself (and his wife) and establish a
3  degree of self-sufficiency.
4      The BPH also relied on the circumstances of Petitioner's
5  commitment offense in deciding to deny Petitioner parole, noting the
6  crime was "particularly callous and was clearly carried out in a
7  dispassionate calculated manner."  Doc. No. 12-1 at 64.  The BPH
8  concluded the hearing by recommending that Petitioner remain
9  disciplinary-free, learn a trade if possible, earn positive chronos
10 and participate in self-help programs.  Doc. No. 12-1 at 70.
11 Based on the entire body of evidence presented at Petitioner's
12 August 31, 2005 parole suitability hearing, this Court cannot say
13 that the state court's approval of the BPH's decision to deny
14 Petitioner parole was an unreasonable application of the California
15 "some evidence" standard, nor that it was based on an unreasonable
16 determination of the facts in light of the evidence.[2]  See Hayward,
17 603 F.3d at 563.

## CONCLUSION

19    For the foregoing reasons, the Petition for a Writ of Habeas
20 Corpus is DENIED.  Petitioner is advised to file timely any state
21 court habeas petitions after any future parole denials, and attach
22 thereto any documents required by the state court.
23    Further, a certificate of appealability is DENIED.  See

---

[2] In light of this conclusion, Petitioner's argument that "a multi-year denial can only be applicable when valid grounds exist to find Petitioner unsuitable for parole," Doc. No. 1 at 17, necessarily fails as well.

1 | Hayward, 603 F.3d at 554-55.  Petitioner has failed to make "a
2 | substantial showing of the denial of a constitutional right."  Id.
3 | (citing 28 U.S.C. § 2253(c)(2)).  Nor has Petitioner demonstrated
4 | that his claim is "debatable among reasonable jurists."  See
5 | Hayward, 603 F.3d at 555.
6 |     The Clerk of Court shall terminate all pending motions as
7 | moot, enter judgment in accordance with this order and close the
8 | file.
9 |
10 |     IT IS SO ORDERED.
11 |
12 | Dated: 7/29/2010                    *[signature: Claudia Wilken]*
13 |                                     CLAUDIA WILKEN
                                        United States District Judge

13

UNITED STATES DISTRICT COURT
FOR THE
NORTHERN DISTRICT OF CALIFORNIA

PEDRO FELICIANO,

    Plaintiff,

v.

BEN CURRY et al,

    Defendant.

Case Number: CV07-04713 CW

**CERTIFICATE OF SERVICE**

I, the undersigned, hereby certify that I am an employee in the Office of the Clerk, U.S. District Court, Northern District of California.

That on July 29, 2010, I SERVED a true and correct copy(ies) of the attached, by placing said copy(ies) in a postage paid envelope addressed to the person(s) hereinafter listed, by depositing said envelope in the U.S. Mail, or by placing said copy(ies) into an inter-office delivery receptacle located in the Clerk's office.

Pedro Feliciano C-59854
P.O. Box 689, ZW-321L
Soledad, CA 93960-0689

Dated: July 29, 2010

Richard W. Wieking, Clerk
By: Nikki Riley, Deputy Clerk

14