1

2

3

4

5

6

7

8                    IN THE UNITED STATES DISTRICT COURT

9                  FOR THE NORTHERN DISTRICT OF CALIFORNIA

10

11    PEDRO FELICIANO,                      No. C 07-4713 CW (PR)

12              Petitioner,

13         v.                               ORDER DENYING PETITION FOR WRIT
                                            OF HABEAS CORPUS; DENYING
14    BEN CURRY, Warden,                    CERTIFICATE OF APPEALABILITY

15              Respondent.

16    _____/

17

18                             INTRODUCTION

19         Pro se Petitioner Pedro Feliciano, a state prisoner

20    incarcerated at the Correctional Training Facility in Soledad,

21    California, seeks a writ of habeas corpus under 28 U.S.C. § 2254

22    challenging the August 31, 2005 decision of the California Board of

23    Parole Hearings (BPH) to deny him parole at his fourth parole

24    suitability hearing.  Doc. No. 1 at 10.

25         On February 7, 2008, the Court issued an Order to Show Cause

26    why the writ should not be granted.  Doc. No. 3.  On April 30, 2008,

27    Respondent filed a motion to dismiss the Petition on the ground that

28    it was untimely, which the Court denied on March 11, 2009.

1   Doc. Nos. 7 & 11.   On June 8, 2009, Respondent filed an Answer.
2   Doc. No. 12.   On June 18, 2009, Petitioner filed a Traverse.   Doc.
3   No. 13.

4        After the matter was submitted, on April 22, 2010, the Ninth
5   Circuit issued its decision in <u>Hayward v. Marshall</u>, 603 F.3d 546
6   (9th Cir. 2010) (en banc), which addressed important issues relating
7   to federal habeas review of BPH decisions denying parole to
8   California state prisoners.   On May 6, 2010, the Court ordered the
9   parties to file Supplemental Briefing explaining their views of how
10  the <u>Hayward</u> en banc decision applies to the facts presented in
11  Petitioner's challenge to the BPH's decision denying him parole.
12  Doc. No. 14.   Respondent filed Supplemental Briefing on May 28,
13  2010; Petitioner filed his on June 14, 2010.   Doc. Nos. 15 & 16.

14       Having considered all of the papers filed by the parties, the
15  Court DENIES the Petition.

16                          BACKGROUND
17       At Petitioner's August 31, 2005 parole suitability hearing, the
18  BPH read two factual summaries of Petitioner's commitment offense.
19  Doc. No. 12-1 at 36-39.   The first derives from Petitioner's 2004
20  parole suitability hearing and is set forth below.

21                  On June 15, 1[9]82 at approximately 8:18
                p.m. officers from the Colton Police Department
22              responded to East Congress Street in Colton to
                [a] call [of] shots fired.   Subsequent
23              investigation revealed that [Petitioner's]
                estranged common-law wife Lazarra . . .
24              Hernandez, victim, went to his residents [sic]
                in order to see her three children.   She was
25              driven to the house by her boyfriend of two
                months, Pedro Rodriguez.   While still in the
26              vehicle, they were approached by [Petitioner],
                who advise[d] Rodriguez to . . . "take out the
27

28                              2

1
2
3
4
5
6
7
8

> rifle" . . . because he was going to obtain one.
> Mr. [Rodriguez] then informed [Petitioner] that
> [he] did not have a rifle. [Petitioner] obtained
> a 22 caliber automatic rifle from his . . .
> house, stood in the . . . area of the doorway
> and fired two to four shots in the direction of
> the vehicle striking Rodriguez in the neck and
> Ms. Hernandez in the head.  Rodriguez was able
> to drive the vehicle away from the area and made
> contact with police.  Both victims received
> emergency medical care and shortly there after
> [sic] Ms. Hernandez was pronounced dead at Loma
> Linda Medical Center. [Petitioner] was arrested
> at his residents [sic] at approximately 8:33
> p.m.

9

Doc. No. 12-1 at 36–38.

10

    Below is Petitioner's version of the commitment offense that

11

originally was set forth in a statement made in 1998, which

12

Petitioner maintained as true at his 2005 parole suitability

13

hearing.

14
15
16
17
18
19
20
21
22
23
24
25
26
27

> [Petitioner] stated that he never told Rodriguez
> to take out the rifle.  He stated that when
> Rodriguez pulled up in his car, he parked right
> in front of [Petitioner's] apartment.
> [Rodriguez] told . . . [Petitioner] that . . .
> Ms. Hernandez wanted her children back.
> [Petitioner] told him that he would not give up
> the children and told Rodriguez to move his car
> from in front of his apartment. . . .
> [Petitioner] claimed . . . that he told
> Rodriguez that [Ms.] Hernandez could go to the
> end of the apartment to see her children.  Then
> he said that Rodriguez refused to move his car
> so [Petitioner] went to his apartment, got a 22.
> [sic] [c]aliber rifle.  It [sic] says that he
> stood in his doorway.  He saw Rodriguez reach
> down.  He thought Rodriguez was reaching for a
> relationship [sic], so he claims he fired two
> rounds not knowing his common-law wife was still
> in the car.  He did not believe at first that he
> had killed – I'll back up.  He claims that even
> when he was arrested, he did not believe at fist
> [sic] that he had killed Hernandez.  He said he
> felt badly and was concerned because he knew he
> was going to jail and that . . . [there] would
> be nobody to take care of his children.  He said

28

3

1               he didn't have any problems with his ex-common
               law wife and never intended to kill her.

Doc. No. 12-1 at 38-39.

     On January 27, 1983, Petitioner was convicted in San Bernardino County Superior Court of one count of first degree murder and one count of attempted first degree murder with firearm enhancements attached to both counts.  Doc. No. 1 at 2.  He was sentenced to a term of twenty-seven years to life in state prison.  Id.  His minimum eligible parole date was June 16, 2000.  Doc. No. 12-1 at 27.

     On August 31, 2005, Petitioner appeared before the BPH for his fourth parole suitability hearing, having served over twenty two years on his twenty seven to life sentence.  Doc. No. 12-1 at 27; Doc. No. 1 at 10.  At the hearing, the BPH found Petitioner was not yet suitable for parole and that he would pose an unreasonable risk of danger to society or threat to public safety if released from prison, citing the circumstances of the commitment offense and expressing concern over Petitioner's absence of realistic parole plans, including his lack of "firm job offers at this time."  Doc. No. 12-1 at 45 & 64-65.

     Petitioner unsuccessfully challenged the BPH's decision in the state superior and appellate courts.  Doc. No. 12-3 at 22-24.  On August 8, 2007, the California Supreme Court summarily denied Petitioner habeas relief.  Doc. No. 1 at 23.  This federal Petition for a Writ of Habeas Corpus followed.  Doc. No. 1.

LEGAL STANDARD

     In <u>Hayward</u>, the Ninth Circuit explained the law in California

4

as it relates to parole suitability determinations:

> The California parole statute provides that the
> Board of Prison Terms "shall set a release date unless
> it determines that the gravity of the current convicted
> offense or offenses, or the timing and gravity of
> current or past convicted offense or offenses, is such
> that consideration of the public safety requires a more
> lengthy period of incarceration for this individual."
> The crucial determinant of whether the prisoner gets
> parole in California is "consideration of the public
> safety."
>
> In California, when a prisoner receives an
> indeterminate sentence of fifteen years to life, the
> "indeterminate sentence is in legal effect a sentence
> for the maximum term, subject only to the ameliorative
> power of the [parole authority] to set a lesser term."
> Under the California parole scheme, the prisoner has a
> right to a parole hearing and various procedural
> guarantees and rights before, at, and after the
> hearing; a right to subsequent hearings at set
> intervals if the Board of Prison Terms turns him down
> for parole; and a right to a written explanation if the
> Governor exercises his authority to overturn the Board
> of Prison Terms' recommendation for parole. Under
> California law, denial of parole must be supported by
> "some evidence," but review of the [decision to deny
> parole] is "extremely deferential."

Hayward, 603 F.3d at 561-62 (footnotes and citations omitted).

The court further explained that:

> [s]ubsequent to Hayward's denial of parole, and
> subsequent to our oral argument in this case, the
> California Supreme Court established in two decisions, In
> re Lawrence [190 P.3d 535, 549 (Cal. 2008)] and In re
> Shaputis, [190 P.3d 573, 582 (Cal. 2008)] that as a matter
> of state law, "some evidence" of future dangerousness is
> indeed a state sine qua non for denial of parole in
> California. We delayed our decision in this case so that
> we could study those decisions and the supplemental briefs
> by counsel addressing them. As a matter of California
> law, "the paramount consideration for both the Board [of
> Prison Terms] and the Governor under the governing
> statutes is whether the inmate currently poses a threat to
> public safety." [Lawrence, 190 P.3d at 552.] There must
> be "some evidence" of such a threat, and an aggravated
> offense "does not, in every case, provide evidence that
> the inmate is a current threat to public safety." [Id. at
> 554.] The prisoner's aggravated offense does not

5

1
2
3
4
5
> establish current dangerousness "unless the record also
> establishes that something in the prisoner's pre- or
> post-incarceration history, or his or her current demeanor
> and mental state" supports the inference of dangerousness.
> [Id. at 555.]  Thus, in California, the offense of
> conviction may be considered, but the consideration must
> address the determining factor, "a current threat to
> public safety."  [Id. at 539.]

6 Hayward, 603 F.3d at 562 (footnotes and citations omitted).

7    After providing this background on California law as it applies

8 to parole suitability determinations, the court then explained the

9 role of a federal district court charged with reviewing the decision

10 of either the BPH or the governor in denying a prisoner parole.

11 According to the Ninth Circuit, this Court must decide whether a

12 decision "rejecting parole was an 'unreasonable application' of the

13 California 'some evidence' requirement, or was 'based on an

14 unreasonable determination of the facts in light of the evidence.'"[1]

15 Hayward, 603 F.3d at 562-63 (citations omitted); see also Cooke v.

16 Solis, 606 F.3d 1206, 1208, n.2 & 1213 (9th Cir. 2010) (applying

17 Hayward and explicitly rejecting the state's argument that "the

18 constraints imposed by AEDPA preclude federal habeas relief" on

19 petitioner's claim; noting that in Hayward, the court "held that due

20 process challenges to California courts' application of the 'some

21 evidence' requirement are cognizable on federal habeas review under

22

23    [1]  Applying this standard to the facts presented in Hayward, the
24 court concluded that the state court's decision finding there was
"'some evidence' of Hayward's future dangerousness because of 'the
25 nature of the commitment offense' and 'the somewhat unfavorable
psychological and counsel reports,'" one of which noted that Hayward
26 "would pose a 'low' to 'moderate' risk of danger if released, as
opposed to 'no' or merely 'low' risk," was not unreasonable and
27 therefore did not warrant federal habeas relief.  Hayward, 603 F.3d
at 563.

28
6

1   AEDPA").

2

3                           DISCUSSION

4   I.   California Law Regarding Parole Suitability Determinations

5        When assessing whether California's parole board's suitability

6   determination was supported by "some evidence," this Court's

7   analysis is framed by California's "regulatory, statutory and

8   constitutional provisions that govern parole decisions in

9   California." Cooke, 606 F.3d at 1213 (citing In re Rosenkrantz, 29

10  Cal. 4th 616 (2002)); see Hayward, 603 F.3d at 561-62.  Under

11  California law, prisoners serving indeterminate life sentences, like

12  Petitioner, become eligible for parole after serving minimum terms

13  of confinement required by statute.  In re Dannenberg, 34 Cal. 4th

14  1061, 1069-70 (2005).  Regardless of the length of the time served,

15  "a life prisoner shall be found unsuitable for and denied parole if

16  in the judgment of the panel the prisoner will pose an unreasonable

17  risk of danger to society if released from prison."  Cal. Code Regs.

18  tit. 15, § 2402(a).  In making this determination, the BPH must

19  consider various factors, including the prisoner's social history,

20  past and present mental state, past criminal history, the base and

21  other commitment offenses, including behavior before, during and

22  after the crime, past and present attitude toward the crime and any

23  other information that bears on the prisoner's suitability for

24  release.  See Cal. Code Regs. tit. 15, § 2402(b)-(d).

25       In considering the commitment offense, the BPH must determine

26  whether "the prisoner committed the offense in an especially

27

28                              7

heinous, atrocious or cruel manner."  Cal. Code Regs. tit. 15,

§ 2402(c)(1).  The factors to be considered in making that

determination include:  "(A) Multiple victims were attacked, injured

or killed in the same or separate incidents; (B) The offense was

carried out in a dispassionate and calculated manner, such as an

execution-style murder; © The victim was abused, defiled or

mutilated during or after the offense; (D) The offense was carried

out in a manner which demonstrates an exceptionally callous

disregard for human suffering; (E) The motive for the crime is

inexplicable or very trivial in relation to the offense."  Id.

     According to the California Supreme Court, "the core statutory

determination entrusted to the Board and the Governor [in

determining a prisoner's parole suitability] is whether the inmate

poses a current threat to public safety . . . ."  In re Lawrence, 44

Cal. 4th 1181, 1191 (2008).  And, "the core determination of 'public

safety' under the statute and corresponding regulations involves an

assessment of an inmate's current dangerousness."  Id. at 1205

(emphasis in original) (citing Rosenkrantz, 29 Cal. 4th 616 and

Dannenberg, 34 Cal. 4th 1061).  The court further explained that:

>       a parole release decision authorizes the Board (and the
>       Governor) to identify and weigh only the factors
>       relevant to predicting "whether the inmate will be able
>       to live in society without committing additional
>       antisocial acts." . . . These factors are designed to
>       guide an assessment of the inmate's threat to society,
>       if released, and hence could not logically relate to
>       anything but the threat currently posed by the inmate.

Lawrence, 44 Cal. 4th at 1205-06 (citations omitted).  The relevant

inquiry, therefore, is:

>       whether the circumstances of the commitment offense,

8

1

2

> when considered in light of other facts in the record,
> are such that they continue to be predictive of current
> dangerousness many years after commission of the
> offense.  This inquiry is, by necessity and by
> statutory mandate, an individualized one, and cannot be
> undertaken simply by examining the circumstances of the
> crime in isolation, without consideration of the
> passage of time or the attendant changes in the
> inmate's psychological or mental attitude.

3

4

5

6  In re Shaputis, 44 Cal. 4th 1241, 1254-55 (2008).

7      The evidence of current dangerousness "must have some indicia

8  of reliability."  In re Scott, 119 Cal. App. 4th 871, 899 (2004)

9  (Scott I).  Indeed, "the 'some evidence' test may be understood as

10 meaning that suitability determinations must have some rational

11 basis in fact."  In re Scott, 133 Cal. App. 4th 573, 590, n. 6

12 (2005) (Scott II); see also Cooke, 606 F.3d at 1216 (holding that

13 the state court decision upholding the denial of parole was "'based

14 on an unreasonable determination of the facts in light of the

15 evidence[],'" Hayward, 603 F.3d at 563 (quoting 28 U.S.C. §

16 2254(d)(2)), and therefore finding petitioner entitled to habeas

17 relief because "[n]othing in the record supports the state court's

18 finding that there was 'some evidence' in addition to the

19 circumstances of the commitment offense to support the Board's

20 denial of petitioner's parole").

21 II.  Analysis of Petitioner's Claim

22     Petitioner initially sought federal habeas corpus relief from

23 the BPH's August 31, 2005 decision finding him unsuitable for parole

24 and denying him a subsequent hearing for two years, on the ground

25 that the decision did not comport with due process.  Doc. No. 1.

26 Specifically, Petitioner argued that at his 2005 parole suitability

27

28                                    9

hearing, the BPH "fail[ed] to address the exact nature of Petitioner's <u>CURRENT</u> character." Id. at 11 (emphasis in original). Petitioner further argues that "a multi-year denial can only be applicable when valid grounds exist to find Petitioner unsuitable for parole." Id. at 17.

Respondent, in both the Answer and post-<u>Hayward</u> Supplemental Briefing, argues that Petitioner is not entitled to relief because he has not demonstrated that the state court decision was contrary to, or an unreasonable application of, the California "some evidence" standard, or that it was based on an unreasonable determination of the facts in light of the evidence. Doc. Nos. 12 & 15.

After reviewing the petition filed in superior court challenging Petitioner's 2005 parole denial, that court concluded: "A review of the record supports a finding that there was 'some evidence' which led the Board to its finding of unsuitability of the Petitioner for parole, for as the [California Supreme Court] described such evidence, it need be only a 'modicum' of evidence." Doc. No. 12-3 at 24. As explained below, after careful review of the record, the Court finds that the state court's approval of the BPH's decision to deny Petitioner parole was not an unreasonable application of the California "some evidence" standard, nor was it based on an unreasonable determination of the facts in light of the evidence. <u>See</u> <u>Hayward</u>, 603 F.3d at 562-63.

The record shows that, at Petitioner's August 31, 2005 parole suitability hearing, the BPH afforded Petitioner and his counsel an

opportunity to speak and present Petitioner's case, gave them time
to review documents relevant to Petitioner's case and provided them
with a reasoned decision in denying parole.   Doc. No. 12-1 at 31-36
& 64-71.   The record also shows that the BPH relied on several
circumstances tending to show unsuitability for parole and that
these circumstances formed the basis for its conclusion that
Petitioner was not yet suitable for parole and would pose an
unreasonable risk of danger to society or threat to public safety if
released from prison.   Doc. No. 12-1 at 64; see Cal. Code Regs. tit.
15, § 2402(a) (stating that a prisoner determined to be an
unreasonable risk to society shall be denied parole).

    At the hearing, the BPH commended Petitioner for his lack of
prior criminal history, for being free since 1995 of counseling
chronos and since 1984 of serious rules violations, and for
receiving several laudatory chronos.   Doc. No. 12-1 at 65.   The BPH
expressed concern, however, that Petitioner's "[v]ocational [and]
educational participation . . . has been nonexistent for about a
decade."   Id. at 67.   Further, the BPH was "troubled" by
Petitioner's  parole plans.   Id. at 65.   The BPH acknowledged that
Petitioner had an offer of employment in construction, but also
noted that during the evidentiary portion of the hearing Petitioner
explained he had various physical limitations which precluded him
from working while in prison.   Id. at 52-53 & 65.   Thus, the BPH did
not consider Petitioner's construction job offer to be viable.   And,
although Petitioner had a place to live with his wife in Hanford,
she was unable to work because of an injury sustained in a car

accident.  Id. at 46–47 & 65–66.  It therefore was not clear how
Petitioner planned to support himself (and his wife) and establish a
degree of self-sufficiency.

The BPH also relied on the circumstances of Petitioner's
commitment offense in deciding to deny Petitioner parole, noting the
crime was "particularly callous and was clearly carried out in a
dispassionate calculated manner."  Doc. No. 12-1 at 64.  The BPH
concluded the hearing by recommending that Petitioner remain
disciplinary-free, learn a trade if possible, earn positive chronos
and participate in self-help programs.  Doc. No. 12-1 at 70.
Based on the entire body of evidence presented at Petitioner's
August 31, 2005 parole suitability hearing, this Court cannot say
that the state court's approval of the BPH's decision to deny
Petitioner parole was an unreasonable application of the California
"some evidence" standard, nor that it was based on an unreasonable
determination of the facts in light of the evidence.[2]  See Hayward,
603 F.3d at 563.

CONCLUSION

For the foregoing reasons, the Petition for a Writ of Habeas
Corpus is DENIED.  Petitioner is advised to file timely any state
court habeas petitions after any future parole denials, and attach
thereto any documents required by the state court.

Further, a certificate of appealability is DENIED.  See

---

[2]   In light of this conclusion, Petitioner's argument that "a
multi-year denial can only be applicable when valid grounds exist to
find Petitioner unsuitable for parole," Doc. No. 1 at 17, necessarily
fails as well.

<u>Hayward</u>, 603 F.3d at 554-55.  Petitioner has failed to make "a substantial showing of the denial of a constitutional right."  <u>Id.</u> (citing 28 U.S.C. § 2253(c)(2)).  Nor has Petitioner demonstrated that his claim is "debatable among reasonable jurists."  <u>See</u> <u>Hayward</u>, 603 F.3d at 555.

The Clerk of Court shall terminate all pending motions as moot, enter judgment in accordance with this order and close the file.

IT IS SO ORDERED.

Dated: 7/29/2010

CLAUDIA WILKEN
United States District Judge

13

1

UNITED STATES DISTRICT COURT
FOR THE
2                       NORTHERN DISTRICT OF CALIFORNIA

3

PEDRO FELICIANO,
4                                                    Case Number: CV07-04713 CW

        Plaintiff,
5                                                    **CERTIFICATE OF SERVICE**

   v.
6

BEN CURRY et al,
7

        Defendant.
8   _____/

9

I, the undersigned, hereby certify that I am an employee in the Office of the Clerk, U.S. District Court,
10  Northern District of California.

11  That on July 29, 2010, I SERVED a true and correct copy(ies) of the attached, by placing said copy(ies)
    in a postage paid envelope addressed to the person(s) hereinafter listed, by depositing said envelope in
12  the U.S. Mail, or by placing said copy(ies) into an inter-office delivery receptacle located in the Clerk's
    office.

13

14

15  Pedro  Feliciano C-59854
    P.O. Box 689, ZW-321L
16  Soledad,  CA 93960-0689

17  Dated: July 29, 2010

                                          Richard W. Wieking, Clerk
18                                        By: Nikki Riley, Deputy Clerk

19

20

21

22

23

24

25

26

27

28
                                          14